UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 07-202 (DSD/JSM) |
| Plaintiff, | |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| SANTANA TURNAGE,<br>a/k/a Dontae Jones,<br>a/k/a Terrell Lobley,<br>a/k/a Shawtas Turnage,<br>a/k/a Kelvin Laron Smith | |
| Defendant. | |

JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came on for hearing before the undersigned upon Santana Turnage's Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure [Docket No. 16]. Michelle Jones, Assistant United States Attorney, appeared on behalf of the United States of America; Reynaldo Aligada, Esq., appeared on behalf of the defendant, Santana Turnage, who was personally present. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Based upon the pleadings, the pre-hearing submissions, exhibits submitted at the hearing on July 23, 2007, and testimony taken from Sergeant Paul Hatle and Officer Kurt Schoonover, it is recommended that the defendant's Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure [Docket No. 16] be **DENIED**.

I.     **FACTUAL BACKGROUND**

At the hearing on July 23, 2007, Minneapolis Police Sergeant Paul Hatle and Officer Kurtis Schoonover testified regarding the events leading to the arrest of defendant on April 8, 2007. At approximately 4 a.m. on April 8, 2007, Sergeant Hatle responded to a radio dispatch reporting that shots had been fired in the area of 37th Avenue and Dowling Avenue in Minneapolis. According to Sergeant Hatle, a citizen called police and reported that four to five shots were fired in the area of 37th Avenue and Dowling Avenue, and that they had seen a silver Chevrolet Blazer circling the block in the vicinity of the shooting. Sergeant Hatle testified that he drove from Plymouth and Morgan Avenues toward 37th and Dowling. As he approached the intersection of Penn Avenue and Willow, he noticed a silver Blazer driving toward him, away from the vicinity of the shots fired. Sergeant Hatle noticed the vehicle because there was not a lot of traffic at that time of the morning, the vehicle slowed its speed, and both the female driver of the Blazer and the male passenger looked in his direction as they passed him on the road. Additionally, Sergeant Hatle noted that it would have taken the vehicle leaving the vicinity of the shooting the same amount of time to reach that point on the road as it would have taken him to reach the same point after he left the area of Plymouth and Morgan Avenues.

Sergeant Hatle turned around and began following the silver Blazer. As he followed the Blazer, Sergeant Hatle observed the vehicle make a series of three left-hand turns without signaling, and then pull over and park, again without signaling, to the curb on Willow Street. Sergeant Hatle activated his overhead lights, turned his spotlight on the vehicle, and called for backup. As he waited for backup, Sergeant Hatle

observed the passenger of the vehicle, later identified as defendant, lean forward in his seat, and then lean back. Sergeant Hatle testified that in his experience, leaning forward in that manner could indicate that someone was putting something in a glove box or under the seat.

When backup arrived approximately one minute later, Sergeant Hatle approached the driver. He asked where she was coming from, and where she was going. Sergeant Hatle testified that the driver appeared nervous, did not make eye contact, and told him that she was headed home. Sergeant Hatle observed that the driver's home was in the opposite direction than the direction from which the car had driven. Sergeant Hatle also testified that as he spoke with the driver, he noticed defendant moving his hands around; specifically, he saw him move his left hand from his lap to the area of his waist and legs. Sergeant Hatle could not see what defendant was doing with his right hand. Sergeant Hatle told defendant to keep his hands where he could see them. When defendant did not fully comply, Sergeant Hatle then pointed his weapon in defendant's direction, and then instructed the backup officers to remove defendant from the vehicle. Sergeant Hatle removed the driver from the vehicle and pat-searched her. Officer Schoonover, one of the backup officers, located a bullet in defendant's pocket, and informed Sergeant Hatle. Sergeant Hatle then looked in the glove box of the vehicle, and located a Glock .357 pistol.

Sergeant Hatle testified that based on his training and experience, the nervous behavior of the occupants, defendant's hand movements, and the fact that the vehicle matched the description of the vehicle reported as being seen in the vicinity of the

shooting led him to believe that the vehicle was the same vehicle involved in the shooting and that a gun may be present in the vehicle.

Officer Schoonover also testified at the hearing on the motion on July 23, 2007. Officer Schoonover responded to Sergeant Hatle's request for backup and drove to the location of the vehicles on Willow Street. According to Officer Schoonover, Sergeant Hatle instructed defendant of the car several times to keep his hands where they could be seen, and defendant dropped his hand down to his side. Sergeant Hatle then instructed Officer Schoonover to remove defendant from the car. After removing defendant from the car, Officer Schoonover pat-searched defendant. Upon searching defendant's left front pocket, Officer Schoonover discovered a bullet and immediately informed Sergeant Hatle. Officer Schoonover placed defendant under arrest, handcuffed him, and put him in Sergeant Hatle's squad car. After being informed by Officer Schoonover of the bullet in defendant's pocket, Sergeant Hatle opened the glove compartment of the vehicle and discovered the firearm.

## II. ANALYSIS

Defendant argues that the pat search of his person was unconstitutional, and that the fruits of the search, including the gun, should be suppressed.

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." However, an investigatory stop is exempt from the Fourth Amendment's requirements that a seizure of a person be made pursuant to a warrant or predicated on probable cause. See United States v. Ortiz-Monroy, 332 F.3d 525, 528 (8th Cir. 2003) (citing Terry v. Ohio, 392 U.S. 1, 21-22 (1968)). "A Terry investigatory

stop allows an officer briefly to detain a citizen if the officer has reasonable suspicion that 'criminal activity may be afoot.'" Ortiz-Monroy, 332 F.3d at 528 (quoting Terry, 392 U.S. at 30); see also United States v. Johnson, 326 F.3d 1018, 1022 (8th Cir. 2003) (citation omitted) ("[A] law enforcement officer may stop and briefly question an individual if the officer has a reasonable suspicion that the person has committed or is about to commit a crime."). "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry, 392 U.S. at 21; see also United States v. Poiter, 818 F.2d 679, 683 (8th Cir. 1987) ("[T]o pass Fourth Amendment scrutiny, a Terry-type stop must be based on a reasonable articulable suspicion of criminal activity, rather than mere conjecture or hunches. In deciding whether the requisite degree of suspicion exists, we view the agents' observations as a whole. . . ."). In assessing the reasonableness of the action, "it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry, 392 U.S at 21-22 (citations omitted).

Additionally, police officers may order people out of a vehicle and may frisk those individuals for weapons "if there is a reasonable belief that they are armed and dangerous." Michigan v. Long, 463 U.S. 1032, 1047-48 (citing Pennsylvania v. Mimms, 434 U.S. 106 (1977)). Protective searches for weapons are constitutional, without probable cause, "'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous.'"

United States v. Davis, 202 F.3d 1060, 1061-62 (8th Cir. 2000) (citations omitted). "[T]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" United States v. Roggeman, 279 F.3d 573, 578 (8th Cir. 2002) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)).

In this case, Sergeant Hatle had a reasonable suspicion that criminal activity "was afoot" at the point that defendant was removed from the Blazer and subjected to a pat-search. First, Sergeant Hatle was aware that a vehicle matching the description of the vehicle in which defendant was riding was reported as circling the vicinity of a shooting. Second, Sergeant Hatle had observed the vehicle commit several traffic violations. Third, after the vehicle stopped and Sergeant Hatle activated his overhead lights and turned his spotlight on the vehicle, Sergeant Hatle observed defendant lean forward and then lean back in his seat, which in his experience, indicated that defendant was putting something in the glove compartment or under his seat. Fourth, after Sergeant Hatle approached the vehicle with the backup officers, he spoke to the driver, who appeared nervous, would not make eye contact with him, and said she was returning home when she was traveling in the opposite direction of her home. See United States v. Bloomfield, 40 F.3d 910, 918-19 (8th Cir. 1994) (finding that nervousness, beyond the normal nervousness of being pulled over for a traffic violation, properly contributes to an officer's reasonable suspicion) (citing United States v. Weaver, 966 F.2d 391, 396 (8th Cir. 1992)). Fifth, despite the fact that Sergeant Hatle told defendant to keep his hands where Sergeant Hatle could see them, defendant kept moving his hands around, and continued to drop his hands. As a result, Sergeant Hatle

6

pointed his service weapon in the direction of defendant and ordered him removed from the vehicle.

Taking all of these facts into account, the Court concludes that Sergeant Hatle had a reasonable belief, based on the information that the vehicle matched the description of a vehicle seen in the vicinity of the shooting, the traffic violations, defendant's body movements, the nervousness of and inappropriate response of the driver, and defendant's repeated hand movements, that defendant had either retrieved or placed a weapon in the glove compartment or under his seat. Therefore, removal of defendant from the vehicle to further investigate the situation, and the subsequent pat-down search of defendant for officer safety was lawfully conducted. See Roggeman, 279 F.3d at 578 (concluding that "reasonable suspicion" justifying a frisk for officer safety is less than is required for "probable cause").

Having lawfully found a bullet in defendant's pocket and placed him under arrest, Sergeant Hatle had the requisite probable cause to search the vehicle in which defendant was a passenger as a search incident to his arrest. See United States. v. Orozco-Castillo, 404 F.3d 1101, 1103 (8th Cir. 2005) ("'when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile'") (quoting New York v. Belton, 453 U.S. 454, 460 (1981)); see also United States v. Barnes, 374 F. 3d 601, 603 (8th Cir. 2004) (as long as an occupant could have reached an area while inside the vehicle, then the police may search that area incident to a lawful arrest).

Further, even without the arrest, police officers may search a vehicle without a warrant when they have probable cause to believe the vehicle contains contraband or

evidence of a crime (see, e.g., United States v. Ross, 456 U.S. 798, 804-09 (1982)) or when an officer has a reasonable suspicion that his safety, or that of others, is at risk the pat down search may be extended to the compartment of a vehicle, "limited to those areas in which a weapon may be placed or hidden." Long, 463 U.S. at 1049. In this regard, the United States Supreme Court held that, since

> protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect, . . . the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

Long, 463 U.S. at 1049-50 (citing Terry, 392 U.S. at 21).

Finally, police officers may conduct such limited vehicle searches even where the individuals have been removed from the vehicle or no longer have immediate access to the vehicle and have not been placed under arrest. See e.g., United States v. Shranklen, 315 F.3d 959, 962 (8th Cir. 2003) (holding that "a search for weapons at an investigative stop can be reasonable even where suspects lack immediate access to weapons"); United States v. Navarret-Barron, 192 F.3d 786, 791 (8th Cir. 1999) (stating that "it is well established that once reasonable suspicion is established, a search of a vehicle's interior is permissible regardless of whether police officers have removed the occupants of the vehicle"). As such, Sergeant Hatle had a reasonable belief that the silver Blazer contained firearms, warranting a protective search in the area where defendant had been seen to possibly place something in the glove box or under the

8

seat. See Peoples, 925 F.2d at 1087 (finding protective search of a vehicle was proper where "[a]bsent an arrest, the suspects would have been free to reenter the van and pose a danger to the officers").

In summary, based upon the information known to Sergeant Hatle – that the vehicle matched the description of a vehicle involved in a shooting, that the vehicle was coming from the direction of the location of the shooting, the behavior of the vehicle's occupants, his observations of defendant's movements in the passenger seat, and the discovery of the bullet in defendant's pocket -- Sergeant Hatle had probable cause to arrest defendant and good reasons to believe that contraband, and specifically a gun, would be found in the vehicle, and to conduct a protective search of the vehicle. Accordingly, this Court finds that, based on the totality of the circumstances, the search of the glove compartment of the automobile was proper.

For all of these reasons, this Court concludes that the initial pat-down search of defendant, as well as the search of the glove compartment of the vehicle, were lawful, and the bullet and gun were lawfully discovered. The Court recommends that defendant's Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure be denied.

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

1. Santana Turnage's Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure [Docket No. 16] be **DENIED**.

Dated:      August 24, 2007


*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **September 10, 2007** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.